UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEPHANIE MCKINNEY,

                     Plaintiff,

   -against-

STATE OF NEW YORK; SHERIFF ADRIAN
ANDERSON, *in his personal and official capacity*;
DUTCHESS COUNTY SHERIFF DEPARTMENT;
and THE COUNTY OF DUTCHESS,

                     Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/1/2022

No. 19-CV-3920 (NSR)

**OPINION & ORDER**

---

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Stephanie McKinney ("Plaintiff") commenced this action on May 1, 2019 against

Defendants State of New York,[1] Sheriff Adrian Anderson in his personal and official capacity

("Individual Defendant" or "Anderson"), Dutchess County Sheriff Department, and the County of

Dutchess ("the County" or "County Defendant").  (ECF No. 1.)  Plaintiff asserts multiple claims

sounding in disability-based and race-based discrimination against defendants.  Plaintiff brings

claims under the New York State Human Rights Law, the Fourteenth Amendment, 42 U.S.C.

§ 1983, Title VII of the Civil Rights Act of 1964, the Americans with Disability Act, the Family

and Medical Leave Act, and 42 U.S.C. § 1981.  ("Am. Compl.", ECF No. 14).  Before the Court

is Defendants Anderson, Dutchess County Sheriff Department, and the County (collectively,

"Defendants")'s motion to dismiss Plaintiff's Amended Complaint for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 35.)

      For the following reasons, Defendants' motion to dismiss is granted.

---

[1] Plaintiff "discontinue[d] all and any actions against the state of New York."  (ECF No. 14 ¶ 6.)
Accordingly, the State of New York is dismissed from this action.

## BACKGROUND

The following facts are drawn from Plaintiff's Amended Complaint and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is a correction officer at the Dutchess County Jail. (Am. Compl. ¶ 11.)  Plaintiff has been employed by the Dutchess County Sheriff's Office ("Sheriff's Office") since December 3, 2007. (*Id.* ¶ 8.)  Starting in March 2017, Plaintiff suffered from work-related injuries and non-work-related injuries, including from an attack by an inmate in Dutchess County Jail. (*Id.* ¶¶ 10–12.)  Plaintiff applied for and was denied disability and sick leave benefits. (*Id.* ¶ 13.)  Plaintiff was also denied accommodation "that would allow her to perform tasks that would not involve significant use of her left arm and harm where she has suffered significant damages to her hands." (*Id.* ¶ 14.)  Instead, the Sheriff's Office attempted to return Plaintiff to duties involving the full use of her two hands. (*Id.* ¶ 15.)  Starting from March 5, 2017, Plaintiff was treated differently because of her disabilities. (*Id.* ¶ 16.)  Plaintiff was asked "hostile questions regarding her injuries" and received "aggressive visitations to her house unannounced" while on unpaid sick leave. (*Id.* ¶ 17.)

Plaintiff alleged that, as a black correction officer, she was treated differently than white and non-black correction officers.  Black officers are required to report to work sooner after their illnesses than white officers. (*Id.* ¶ 19.)  For example, Plaintiff was compelled to attend arbitration on the fourth day after an extensive surgery. (*Id.* ¶ 21.)  White officers were not subjected to the hostile or aggressive monitoring while on sick leave like Plaintiff was. (*Id.* ¶¶ 17–18, 20.)  Non-black officers were given generous sick and disability retirement terms while black officers, including Plaintiff, were subjected to multiple visits by county officers at home to verify their whereabouts and had officers positioned around their homes watching their movements during sick leave. (*Id.* ¶ 27.)  Management at Plaintiff's employment routinely rejected Plaintiff's

doctor's notes and forced her to report to work.  (*Id.* ¶ 28.)  White officers were not subjected to inmate contact while Plaintiff was despite it being against policy.  (*Id.*)  Plaintiff was forced to return to work with a 75% disability rating while white officers with such ratings were not forced to return.  (*Id.* ¶ 31.)  Management routinely granted requests for paid sick leave to white and other non-black officers while Plaintiff was denied.  (*Id.* ¶ 32.)

Plaintiff alleges the County had a policy that treated white officers differently than black officers.  The County policy "allows only white officers to get privileged posts," which are posts at the classification, booking, medical, and transportation departments.  (*Id.* ¶¶ 22–23, 26.) Promotions are "weighed heavily" towards white officers.  (*Id.* ¶ 23.)  White officers who engaged in serious misconduct, including pornography and criminal arrests, were permitted to keep their jobs, were not scolded, and at times were granted vacation time "to save them from trouble," while black officers are punished and suspended for minor infractions.  (*Id.* ¶¶ 24–25.)

As a result of the treatment by Defendants, Plaintiff lost substantial amount of income and seniority.  (*Id.* ¶ 34.)  She lost her insurance due to being denied half pay sick leave.  (*Id.* ¶ 32.) On multiple occasions, supervisors "made comments castigating the Plaintiff for taking time off for sickness saying its [sic] not a good reflection on the career of an officer who wants to advance." (*Id.* ¶ 36.)  Plaintiff was "constantly reminded by her superiors to stop complaining of discrimination and unfair treatment of black [officers] or be disciplined as insubordinate."  (*Id.* ¶ 41.)

Plaintiff received a right to sue letter from the United States Equal Employment Opportunity Commission,[2] *id.* ¶ 43, and commenced the instant action against Defendants on May 1, 2019 (ECF No. 1).  On August 1, 2019, Plaintiff filed an Amended Complaint alleging violations

---

[2] Although the Amended Complaint does not state when the right to sue letter was received, it alleges that Plaintiff "commenced this case within 90 days of the receipt of right to sue letter."  (*Id.* ¶ 43.)

under the New York State Human Rights Law ("NYSHRL") New York Executive Law Section 296, the equal protection clause of the Fourteenth Amendment, 42 U.S.C. § 1983 ("Section 1983"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disability Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and 42 U.S.C. § 1981 ("Section 1981"). (ECF No. 14.) On January 8, 2021, Defendants filed a motion to dismiss all claims pursuant to Fed. Rule of Civil Procedure 12(b)(6). (ECF No. 35.) Plaintiff opposed the motion. (ECF No. 40.) Defendants filed a reply in support of their motion. (ECF No. 42.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## DISCUSSION

Defendants seek to dismiss all claims brought by Plaintiff for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).[3] ("Defs. Mot.", ECF No. 37.) The Court

---

[3] Defendants also seek to dismiss any punitive damages sought against the County. (Defs. Mot. at 9.) Plaintiff clarified she does not seek punitive damages against the County. (Pl. Opp. at 14.)

addresses each claim below.

I.      **Claims Against Individual Defendant In His Personal Capacity**

Plaintiff brought claims against Sheriff Adrian Anderson in his personal and his official capacity.  The Amended Complaint does not make any reference to Anderson besides listing his name and title in the case caption.  "It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (internal quotations and citations omitted); *see also Magnotta v. Putnam Cty. Sheriff*, No. 13 CIV. 2752 GBD GWG, 2014 WL 705281, at *8 (S.D.N.Y. Feb. 24, 2014).  Since the Amended Complaint only names Anderson in its caption and does not make any allegations regarding Anderson's personal involvement in the alleged bad acts, Plaintiff's claims against Anderson in his personal capacity are dismissed without prejudice.  Plaintiff's claims against Anderson in his official capacity are addressed below.

II.     **Claims Against Dutchess County Sheriff Department**

The Amended Complaint named the Dutchess County Sheriff Department ("DCSD") as a defendant.  Defendants note that DCSD is not an entity that can be sued.  (Defs. Mot. at 3.)  "Courts look to state law when determining whether a municipal agency may be sued."  *Rogers v. Cartagena*, 2013 WL 1285169, at *3 (S.D.N.Y. Mar. 28, 2013) (citing Fed. R. Civ. P. 17(b)(3)). "Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.  Therefore, municipal departments . . . are not amenable to suit."  *Hoisington v. Cty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) (citations omitted).  DCSD is a department of Dutchess County and is not a suable entity.  *See*

*Magnotta*, 2014 WL 705281, at *9.  Accordingly, all claims against DCSD are dismissed with prejudice.

### III.    Equal Protection Claim

Plaintiff brings a Section 1983 claim that Defendants violated the equal protection clause of the Fourteenth Amendment because they "subject[ed] Plaintiff to terms and conditions of employment different from those offered to employees of a different racial extraction."  (Am. Compl. ¶¶ 49–54.)

The Fourteenth Amendment provides public employees with the right to be "free from discrimination."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)).  "Consequently, public employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law."  *Id.*  To state a Section 1983 claim, plaintiff must allege (1) a violation of a right secured by the Constitution and laws of the United States, and (2) deprivation was committed by a person acting under color of state law.  *Id.* at 87–88.

The equal protection clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state a claim, "it is axiomatic that plaintiff must allege that similarly situated persons were treated differently."  *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994).

### a.  Similarly Situated Comparators

Plaintiff alleges that she as a black correction officer was treated differently than white and non-black officers because of her race.  Plaintiff alleges: (i) non-black officers receive more generous sick and disability terms (Am. Compl. ¶¶ 19–20, 27); (ii) only white officers receive

"privileged posts" (*id.* ¶¶ 22–23, 26); (iii) promotions are weighed heavily towards white officers (*id.* ¶ 23); and (iv) black officers are punished harsher than white officers for any misconduct or infraction (*see id.* ¶¶ 24–25).

Defendants argue that Plaintiff has not alleged an inference of discrimination because Plaintiff makes merely conclusory statements that white and non-black employees were treated better without pleading facts regarding those employees. (Defs. Mot. at 4–5.)  The Court agrees. To raise an inference of discrimination, Plaintiff can show that the employer treated her less favorable than a similarly situated employee outside of her protected group. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citing *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).  General assertions that Plaintiff was subjected to different treatment than her white or non-black colleagues, without more, is insufficient. *See Pagan*, 2018 WL 6591578, at *5; *see also Whittle v. Cty. of Sullivan*, No. 16-CV-725 (CS), 2017 WL 5197154, at *7 (S.D.N.Y. Nov. 8, 2017).  Plaintiff makes general allegations about the ways in which white and non-black officers are treated differently than black officers but does not plead facts to show that she was treated differently than a similarly situated white or non-black employee.  For example, Plaintiff does not allege any facts about the other officers' identities, their experience levels, their conducts, or their job descriptions.  It is unclear which white or non-black officers received paid sick leave, whether their injuries or sick leave requests were comparable, which officers received privileged posts or promotions, what those officers' job responsibilities were, who they reported to, or how their employment and disciplinary histories compared to Plaintiff's. *See Whittle*, 2017 WL 5197154, at *7.  Without pleading facts showing similarly situated comparators, Plaintiff has not sufficiently raised an inference of discrimination under the equal protection clause.

**b.   Individual Defendant's Personal Involvement**

Plaintiff has not alleged any personal involvement by Defendant Anderson.  As Plaintiff concedes, Section 1983 holds individuals for discriminatory and retaliatory conduct if "there is some affirmative link to causally connect the actor with the discriminatory action, such that the claim is 'predicated on the actor's personal involvement.'"  ("Pl. Opp.", ECF No. 40 at 9 (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000)); *see also Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").  Plaintiff argues the alleged broad practice of discriminatory treatment by the supervisory staff at the Sheriff's office were pursuant to policies "developed or approved" by Anderson.  (Pl. Opp. at 9.)  But this is not alleged in the Amended Complaint and the complaint itself does not make any reference to Anderson.  Accordingly, the Court finds that Plaintiff has not alleged any personal involvement by Anderson and thus has not sufficiently pled a Section 1983 claim against him in his official capacity.

For the reasons set forth above, Plaintiff's Section 1983 equal protection claim against all defendants are dismissed without prejudice.

**IV.   Title VII Claim Against County Defendant**

Plaintiff brings claims of racial discrimination, hostile work environment, and retaliation in violation of Title VII against County Defendant.  (Am. Compl. ¶¶ 55–58).

**a.   Racial Discrimination**

Title VII provides that an employer cannot discriminate against "any individual" based on his or her "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To survive a motion to dismiss, a claimant must plausibly allege: (1) the employer discriminated against her (2)

because of her race, color, religion, sex, or national origin. *Lowman v. NVI LLC*, 821 Fed. App'x. 29, 30 (2d Cir. 2020) (quoting *Vega*, 801 F.3d at 85).

An employer discriminates against an employee "by taking an adverse employment action against [her]." *Vega*, 801 F.3d at 85. An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Id.* (citing *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). The Second Circuit has indicated that such an action "is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

Relatedly, an adverse action is defined in part by the causal role the claimant's protected identity played in the change. Thus, the change in terms and conditions must be "because of" the employee's race, color, religion, sex, or national origin such that it was "a substantial or motivating factor" contributing to the employer's decision to take the action. *Id.* (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 249 (1989) (plurality opinion), *superseded on other grounds by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071). At the motion to dismiss stage, an employee must allege the adverse action was made "at least in part for a discriminatory reason" by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)).

### i. Adverse Employment Action

Plaintiff appears to allege four potential adverse employment actions: being (1) denied privileged posts with no inmate contact; (2) forced to return to work while she was ill; (3) denied half pay sick leave; and (4) denied accommodation to perform tasks that do not involve significant use of her left arm. (*See* Pl. Opp. at 5–6; Am. Compl. ¶¶ 13–34.)

9

To qualify as an adverse employment action, Plaintiff must allege these actions were materially adverse changes in the terms and conditions of her employment. To be "materially adverse," a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Reyes v. New York State Off. of Child. & Fam. Servs.*, No. 00 Civ. 7693(SHS), 2003 WL 21709407, at *7 (S.D.N.Y. July 22, 2003). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.*

The Court finds the alleged denial of privileged post assignments does not constitute an adverse employment action. Plaintiff does not allege that the preferred post assignments would have resulted in an increase in wage, salary, benefits, change in title, or significantly increased material responsibilities. These posts are favored because they do not require inmate contact. However, it can be inferred from the Amended Complaint that all post assignments—whether the posts require inmate contact or not—are within the job description of a correction officer. Thus, a denial of a particular post assignment does not alter her job responsibilities. Plaintiff's preference for a privileged post is insufficient to establish the denial of such post assignments arises to the level of an adverse employment action. *See Santiago v. City of New York*, No. 05-cv-3668 RRM, VVP, 2009 WL 935720, at *9 (E.D.N.Y. Mar. 31, 2009); *see also Monroe v. City of Danbury*, No. 3:09-CV-02132 DJS, 2014 WL 3943632, at *7 (D. Conn. Aug. 11, 2014) (subjective preference for an assignment does not constitute "objective evidence of material disadvantage").

Denials of requested employment accommodations may be considered adverse actions. *See Little v. Nat'l Broadcasting Co., Inc.*, 210 F. Supp. 2d 330, 337 (S.D.N.Y. 2002). Plaintiff alleges that Defendants denied her paid sick leave and accommodations that would allow Plaintiff

to perform tasks that would not involve significant use of her injured left arm.  (Am. Compl. ¶¶ 14–15.)  Drawing reasonable inferences in the non-movant's favor, the Court finds that Plaintiff has sufficiently alleged adverse employment actions because the denials of employment accommodations "created a materially significant disadvantage" in Plaintiff's working condition by requiring her to return to work when she was still ill and to perform tasks involving two hands when she was unable to use her left hand.  *See, e.g.*, *Beyer v. Cty. of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008) (requiring "objective indicia of material disadvantage" to constitute an adverse employment action); *Krishnapillai v. Donahoe*, No. 09-CV-1022 NGG SM, 2013 WL 5423724, at *13 (E.D.N.Y. Sept. 26, 2013) (denial of sick leave constitutes a material adverse employment action).  Accordingly, Plaintiff has pled adverse employment action under Title VII.

### ii.   Inference of Discrimination

However, Plaintiff's Title VII racial discrimination claim fails on the second element. Discrimination claims under Title VII are subject to the same standards as those under Section 1983.  *See Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 521 (E.D.N.Y. 2019).  As discussed *infra* III.a., Plaintiff has not pled facts to show a plausible inference of discrimination because she has not identified other similarly situated white or non-black employees who received the half pay sick leave or other work accommodations.  *See Goodine v. Suffolk Cty. Water Auth.*, No. 14-CV-4514 (JS)(ARL), 2016 WL 375049, at *6 (E.D.N.Y. Jan. 29, 2016) (finding plaintiff failed to meet "minimal" burden at pleading stage by failing to identify a similarly situated comparator).  Accordingly, Plaintiff's Title VII discrimination claim against County Defendant is dismissed without prejudice.

11

**b.  Hostile Work Environment**

To state a hostile work environment claim, Plaintiff must show that Defendants' conduct (1) was "objectively severe or pervasive," (2) created an environment that was "subjectively perceived as hostile or abusive," and (3) created such an environment "because of" the plaintiff's race.  *See Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 780 (S.D.N.Y. 2019).  To survive a motion to dismiss, a plaintiff need only "plead facts sufficient to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse."  *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 514 (S.D.N.Y. 2016).  The Court looks at the totality of circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Yan v. Ziba Mode Inc.*, No. 15-cv-47 (RJS), 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016).

To support her claim, Plaintiff alleges she was subjected to oppressive and hostile visits to her house and was aggressively questioned while she was out on unpaid sick leave.  (Am. Compl ¶¶ 17–18, 27; *see* Pl. Opp. at 7.)  She alleges this occurred "on multiple occasions" and the officers would position themselves in visible spots and watch Plaintiff's movements around her home. (Am. Compl. ¶ 27.)   Plaintiff also alleges her supervisors made comments "castigating [her] for taking time off for sickness saying it[']s not a good reflection on the career of an officer who wants to advance."  (*Id.* ¶ 36.)

Defendants argue that Plaintiff has not alleged severe or pervasive conduct that arises to a hostile workplace based on racial animus.  (Def. Mot. at 6.)  The Court agrees.  First, Plaintiff has not alleged that the questioning, monitoring, and visitations at her home during sick leave were

pervasive enough to "alter the conditions of employment." *Beale v. Mount Vernon Police Dep't*, 895 F. Supp. 2d 576, 590 (S.D.N.Y. 2012).   Although there is no "magic number of incidents above which harassment is actionable," *id.*, Plaintiff's broad allegations of this happening on "multiple occasions" since March 2017 are insufficient to show pervasiveness.  *Id.* (finding half-dozen comments over a sixteen-month period are insufficient).   Moreover, all these instances occurred at Plaintiff's home while she was on sick leave.   Plaintiff has not alleged that this conduct, which occurred outside of the workplace, altered the conditions of her employment at the Dutchess County Jail or that similar conduct has occurred at the workplace.   *See, e.g.*, *Meece v. Atl. Se. Airlines, Inc.*, No. 1:0-CV-3698-WSDECS, 2006 WL 2228937, at *2 (N.D. Ga. Aug. 2, 2006) (alleged harassment occurring off work premises "did not occur in the work environment within the meaning of Title VII.").   Second, Plaintiff points to comments by her supervisors that castigate Plaintiff for taking too much sick leave.   These comments—that it is "not a good reflection on the career of an officer who wants to advance"—do not appear to be related to Plaintiff's race and are comments with regards to Plaintiff's number of sick leave requests.   Without alleging more, Plaintiff's allegations are insufficient, and her hostile work environment claim is hereby dismissed without prejudice.

   **c.  Retaliation**

   To state a Title VII retaliation claim, Plaintiff must plead facts that show (1) she "participated in a protected activity known to the defendant"; (2) "the defendant took an employment action disadvantaging her"; and (3) there was a "casual connection between the protected activity and adverse action." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007).   To survive a motion to dismiss, the plaintiff must plausibly allege: "(1) defendants discriminated or

took an adverse employment action against him [or her], (2) because he [or she] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (internal quotations omitted).

An "adverse employment action" is read more broadly in the Title VII retaliation context than in the Title VII discrimination context. *Id.* Thus, an adverse employment action sufficient to support a retaliation claim is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006)). To show causation between the adverse action and the protected activity, a claimant must plausibly plead a connection between the two events. *Id.* Additionally, the plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.*

Plaintiff alleges she experienced retaliation since March 2017 and "was constantly reminded by her superiors to stop complaining of discrimination and unfair treatment of black [sic] or be disciplined as insubordinate." (Am. Compl. ¶¶ 38, 41; Pl. Opp. at 8.) The Second Circuit has recognized that "protected activity" includes "informal protests of discriminatory employment practices, including making complaints to management." *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990). Such informal complaints "must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII." *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012). Drawing reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has sufficiently pled she engaged in protected activity because the Amended Complaint alleges she complained about the discrimination and unfair treatment of black officers and her supervisors were aware of such complaints.

However, Plaintiff has not adequately pled an adverse employment action in the retaliation context. Plaintiff has not alleged that her supervisors' comments were "materially adverse" such

14

that the action "may have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68.  At most, Plaintiff's supervisor's comments can be interpreted as a threat of discipline if Plaintiff continued to complain.  But Courts have found a threat that is not carried out is insufficient because "empty verbal threats do not cause an injury, and therefore are not material adverse actions, where they are unsupported by any other actions." *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 571 (2d Cir. 2011) (quoting *Vazquez v. Southside United Hous. Dev. Fund Corp.*, No. 06-CV-5997 (NGG)(LB), 2009 WL 2596490, at *12 (E.D.N.Y. Aug. 21, 2009)); *Alexander v. City of New York*, 957 F. Supp. 2d 239, 249 (E.D.N.Y. 2013) ("threat of discipline do[es] not amount to materially adverse employment action[]").  Because Plaintiff does not allege she was actually disciplined, the Court finds that her allegations do not arise to the level of an adverse employment action by the County Defendants. Plaintiff's Title VII retaliation claim is dismissed without prejudice.

## V.     Section 1981 Claim

The parties dispute whether Plaintiff may bring a Section 1981 claim against a state actor. (*See* Defs. Mot. at 9; Pl. Opp. at 14.)  Because Plaintiff asserted Defendants violated her federal rights pursuant to Section 1983, Plaintiff has properly brought a Section 1981 claim.  *Villar v. City of New York*, 135 F. Supp. 3d 105, 140 (S.D.N.Y. 2015) (Section 1981 violations by government units may be vindicated through Section 1983).

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 410 (S.D.N.Y. 2014) (quoting *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004)).  "Section 1981 discrimination claims are analyzed under the same substantive standard applicable to Title VII discrimination claims." *Id.* (collecting cases).

15

For the reasons discussed above regarding Plaintiff's Title VII discrimination claim, the Amended Complaint fails to allege a causal connection between racial discrimination and any action arising to the level of adverse employment action.  Accordingly, Plaintiff's Section 1981 claim is also dismissed without prejudice.

## VI.    ADA Claim

Plaintiff alleges Defendants discriminated against her because of her disability.  (Am. Compl. ¶ 61.)  Title I of the ADA forbids discrimination against persons with disabilities in employment.  42 U.S.C. §§ 12111–12117.  To establish a *prima facie* case under Title I, a claimant must sufficiently allege: (1) her employer is subject to the ADA; (2) that she was disabled within the meaning of the ADA; (3) that she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) that she suffered an adverse employment action due to her disability.  *Klaes v. Jamestown Bd. of Public Utilities*, No. 11-CV-606, 2013 WL 1337188, at *7 (W.D.N.Y. Mar. 29, 2013) (citing *Cameron v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d. Cir. 2003)).  At the motion to dismiss stage, the Court considers the elements of the *prima facie* case "in determining whether there is sufficient factual matter in the complaint" which "gives defendant a fair notice of plaintiff's claim, and the grounds on which it rests."  *Id.* (citing *Murphy v. Suffolk Cty. Cmty. Coll.*, No. 10-CV-0251 (LDW)(AKT), 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011)).

Fatal to her claim, Plaintiff has failed to allege she is disabled within the meaning of the ADA.  Under the ADA, "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [the] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1).  Plaintiff vaguely states she has a disability without pleading what her disability is and how it

qualifies under the ADA.  Plaintiff also allege she has injuries in her left arm and that she suffered injuries in work and non-work-related incidents.  (Am. Compl. ¶¶ 10, 14.)  But the Amended Complaint does not specify what those injuries are and whether they affect her life or otherwise limit her enjoyment of any major life activities.  *See Cody v. Cty. of Nassau*, 577 F. Supp. 2d 623, 638–39 (E.D.N.Y. 2008) (defining major life activities).  Without more,[4] Plaintiff has not alleged she is disabled within the meaning of ADA and accordingly her ADA claim is dismissed without prejudice.

## VII.   FMLA Claim

Plaintiff alleges she was denied equal terms and conditions of employment in violation of FMLA.  (Am. Compl. ¶ 60.)  Defendants seek to dismiss this claim on the basis that Plaintiff has not alleged whether she applied for benefits under the statute or otherwise qualified for the benefits, whether she was denied benefits, or why she was denied benefits.  (Defs. Mot. at 8.)  Because Plaintiff's opposition does not address Defendants' arguments to dismiss the FMLA claim, this claim is deemed abandoned.  *See Pagan v. Cty. of Dutchess*, No. 18 CV 1785 (VB), 2018 WL 6591578, at *3 (S.D.N.Y. Dec. 14, 2018); *M.M. ex rel. J.M. v. N.Y.C. Dep't of Educ.*, 2010 WL 2985477, at *6 (S.D.N.Y. July 27, 2010) (collecting cases).  Accordingly, Plaintiff's FMLA claim is dismissed without prejudice.

## VIII.  NYSHRL Claim Against Individual Defendant

Plaintiff alleges Defendant Anderson violated her rights under NYSHRL by subjecting her to discrimination, hostile work environment, and retaliation.  (Am. Compl. at 5.)  NYSHRL prohibits an employer from discriminating against an individual on the basis of race, color, or

---

[4] Plaintiff filed an affirmation in which she states she was able to perform the essential duties of her job in support of her ADA claim.  (ECF No. 40-1 at 2; *see* Pl. Opp. at 18).  For a motion to dismiss, this Court does not consider this affirmation and only looks to Plaintiff's complaint in considering the sufficiency of her pleadings.

national origin.  N.Y. Exec. L. § 296(1)(a).  A supervisor—that is, a person with the power to hire and fire plaintiff—may be held liable as an employer if he or she "actually participates in the conduct giving rise to the discrimination." *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (internal quotations and alterations omitted).  In addition, NYSHRL makes it unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." *Id.*

Defendants argue that Plaintiff has failed to sufficiently plead this claim against Individual Defendant because the Amended Complaint makes no mention of Anderson and his status as Sheriff is an insufficient basis for imposing liability.  (Defs. Mot. at 4.)  Plaintiff opposes by arguing that Anderson, through his action in presiding over racial policies that favor white officers, aided and abetted the actions of his officers and management staff.  (Pl. Opp. at 4.)  But Plaintiff's theory in her opposition papers is not alleged in the Amended Complaint.  The Amended Complaint does not make any reference to Anderson, does not set forth a theory that he presided over the alleged racial policies, and does not allege any direct or indirect participation by Anderson in the alleged misconduct.  Plaintiff has not made a single allegation in the Amended Complaint that shows Anderson actually participated in or aided, abetted, incited, compelled, or coerced the alleged misconduct.  Accordingly, Plaintiff's NYSHRL claim against Defendant Anderson is dismissed without prejudice.

## IX.    Leave to Amend

Plaintiff requests to amend her complaint should the Court find her pleading to be deficient. (Am. Comp. at 15–16.)  Defendants did not oppose her request.  Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet*

*Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The Court hereby grants Plaintiff leave to amend her complaint to detail her claims against Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  Plaintiff's Section 1983, Title VII, Section 1981, ADA, FMLA, and NYSHRL claims against County Defendants and Sheriff Adrian Anderson in his official capacity are dismissed without prejudice. All claims against the State of New York and Sheriff Adrian Anderson in his personal capacity are dismissed without prejudice.  All claims against the Dutchess County Sheriff's Department are dismissed with prejudice.

Plaintiff is granted leave to file a Second Amended Complaint as to any claims that have not been dismissed with prejudice.  If Plaintiff chooses to do so, Plaintiff will have until May 2, 2022 to file a Second Amended Complaint.  Defendants are then directed to answer or otherwise respond by June 1, 2022.  If Plaintiff fails to file a Second Amended Complaint within the time allowed, and it cannot show good cause to excuse such failure, any claims dismissed without prejudice by this order will be deemed dismissed with prejudice.  If no Second Amended Complaint is timely filed, the parties are directed to complete and file a Case Management Plan

and Scheduling order by June 1, 2022.  The Clerk of Court is respectfully directed to terminate the

motion at ECF No. 35.

Dated:    March 1, 2022                                    SO ORDERED:
          White Plains, New York

                                              _____
                                                   NELSON S. ROMÁN
                                                 United States District Judge