USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHANIE McKINNEY,

                            Plaintiff,

        -against-

THE COUNTY OF DUTCHESS,

                            Defendant.

No. 19-CV-03920 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Stephanie McKinney ("Plaintiff") commenced this action on May 19, 2019 (ECF No. 1) and on May 5, 2022, filed a Second Amended Complaint (the "SAC")( ECF No. 50), which is the operative complaint for purposes of this Opinion & Order. Plaintiff asserts several claims of discrimination on the basis of disability and race against the County of Dutchess ("Defendant" or "the County"). Plaintiff brings these claims under the Fourteenth Amendment of the United States Constitution, Title VII of the Civil Rights Act of 1964, the Americans with Disability Act (the "ADA"), and 42 U.S.C. § 1981 ("Section 1981"). (*See* SAC at ¶¶ 6, 57-62 74-88.) Before the Court is Defendant's motion to dismiss Plaintiff's SAC for failure to state a plausible claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 57.)

Defendant's motion to dismiss is GRANTED in its entirety for the following reasons.[1]

## BACKGROUND

The following facts are drawn from the SAC and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] The Court notes that Plaintiff's SAC contains many general and conclusory assertions lacking in specificity. The Court further notes that although Plaintiff is purportedly employed by a municipality, Duchess County, she does not reference any possible contractual rights.

From December 2007 through April 2021, Plaintiff was employed by the Dutchess County Sheriff's Office as a corrections officer at the Dutchess County Jail (SAC at ¶¶ 7, 12). In March 2017, Plaintiff experienced non-work-related injuries that prevented her from working until October 2017. (SAC at ¶ 10). As a result of Plaintiff's injured left hand, she was is unable to carry out normal functions, such as lifting objects, or "doing any other physical activities . . . . " (*Id*. at ¶ 11). In May 2018, while working at the Dutchess County Correctional facility, Plaintiff was attacked by an inmate which resulted in "serious injur[ies.]" (*Id* at ¶¶ 12-13).

As a result of these injuries, Plaintiff unsuccessfully applied for disability and sick leave benefits, as well as reasonable accommodations "that would allow her to perform tasks that would not involve significant use of her left arm. (*Id*. at ¶¶ 14-15). Despite being informed of her disabilities by both Plaintiff and Plaintiff's physicians, the County "continuously" attempted to have Plaintiff return to work to her full duties. (*Id*. at ¶ 16).

Plaintiff alleges differential treatment as a result of her disabilities, including "aggressive[,] unannounced" visitations by officers to her house and "hostile" questioning of Plaintiff on her injuries. (*Id*. at 20-22). Moreover, Plaintiff was denied workers compensation, despite being eligible, and was only given six weeks of half-pay sick leave compensation, rather than the six months she was entitled to. (*Id*. at ¶¶ 23-24). During her leave in 2017, Plaintiff contacted her human resources department ("HR") to request full benefits under the half-pay plan but was told that she would not receive any additional compensation and that HR was following the "Sheriff[']s] orders." (*Id*. at ¶ 25). Defendant also cut off Plaintiff's health insurance benefits. (*Id*. at ¶ 27). Similarly, despite Plaintiff's repeated inquiries, Plaintiff was accused of failing to appear for her N.Y. Gen. Mun. L. § 207-c ("Section 207-c") interview, which resulted in her benefits being terminated. (*Id.* at ¶ 32). Further, on two occasions, one in 2017 and the other in 2018, officers came to Plaintiff's home  "demanding that she sign on to be

on sick leave without pay[,]" which Plaintiff rejected. (*Id*. at ¶ 28). Plaintiff also alleges she was compelled to attend an arbitration four days after "extensive surgery, while under the influence of pain medication . . . ." (*Id*. at ¶ 49).

On December 18, 2018, Plaintiff was directed by Defendant to return to work based following its review of a medical report prepared by a Dr. Weiner. (*Id*. at ¶ 30). Plaintiff, however, had not been seeing this Dr. Weiner; instead, she was attended to by a Dr. Krishnamurthy, who agreed with a separate doctor that Plaintiff was also seeing that she was not fit to return to work in December 2018. (*Id*. at ¶¶ 30-31).

Plaintiff also alleges that, because she is Black, she received disparate treatment compared to her white and non-Black colleagues. (*Id*. at ¶¶ 33-34, 50, 67). For instance, Plaintiff alleges she was required to return to work sooner after her illness than her white colleagues. (*Id*. at ¶ 33). Plaintiff also claims that the County established a policy where white officers were given privileged posts, such as posts in the "Classification Department, Booking, and Court Transportation . . ." and received more generous sick and disability retirement terms than Black officers. (*Id.* at ¶¶ 50-55). Similarly, white officers were not subject to the same sorts of monitoring, surveillance, and visits by officers while on sick leave as Plaintiff was during her leave period. (*Id*. at ¶ 55). Plaintiff also argues that white officers with a 75% disability rating were, unlike Plaintiff, were "never" forced back to work. (*Id*. at ¶ 60).

Plaintiff also alleges she was the victim of a hostile work environment, experiencing retaliation and discriminatory treatment since her initial injury in March 2017. (*Id*. at ¶¶ 66-67.) Plaintiff also experienced racial discrimination from her superiors, including Colonel Krom, who "regularly" referred to Plaintiff in a racially disparaging manner and insinuated the Plaintiff was a drug user. (*Id*. at ¶¶ 26, 71.)

Plaintiff received a right to sue letter from the United States Equal Employment Opportunity Commission and then commenced this action in May 2019—which Plaintiff claims was within 90 days of receiving that letter (*see* ECF No. 1; SAC at ¶ 73). Plaintiff filed her First Amended Complaint (the "FAC") on August 1, 2019. (ECF No. 14). On January 8, 2021, the named defendants in the FAC moved to dismiss (*see* ECF No. 35), which this Court granted pursuant to an opinion and order dated March 1, 2022. ("*McKinney I*", ECF No. 47). The Plaintiff filed her SAC on May 5, 2022. The Plaintiff alleges claims under the Fourteenth Amendment, Title VII, the ADA, and 42 U.S.C. § 1981. (SAC at ¶¶ 6, 74-88).  Defendant moved to dismiss the SAC on October 17, 2022. (ECF No. 57). Plaintiff opposed that motion (ECF No. 63), to which Defendant submitted a reply in support of its motion. (ECF No. 64).

## LEGAL STANDARD

### I.      Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Id.* at 662, 678 (quoting *Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

Moreover, in addition to the facts alleged in the complaint, the Court may consider "documents

attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (citing *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotations omitted). The Court may also consider documents not incorporated by reference when the complaint nevertheless "relies heavily upon [their] terms and effect, thereby rendering the document integral to the complaint." *Id.* (internal quotations omitted) To be integral, the plaintiff must "rely on the terms and effect of a document in drafting the complaint . . . mere notice or possession . . ." is insufficient. *Id.* (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2022).

## DISCUSSION

Defendant seeks to dismiss the entirety of the SAC pursuant to Rule 12(b)(6) for failure to state a claim. ("Def. Mot.", ECF No. 57). Before turning to its analysis, the Court notes at the outset that, with one exception,[2] all of the causes of action asserted in the SAC are identical to the second through fifth Causes of Action asserted in the FAC. (*compare* SAC at ¶¶ 74-88 *with* FAC at ¶¶ 44-63). These carryovers from the FAC are so extensive they include a statement that the SAC's third Cause of Action "is not directed at the individual defendant . . ." despite the SAC having but one defendant, the County. (SAC at ¶ 82). This carryover is similarly present in the factual allegations of the SAC, where Plaintiff has often utilized the same previously asserted  factual allegations from the FAC—sometimes verbatim, others including additional allegations. (*compare* SAC at ¶¶ 14, 15, 20-22 *with* FAC at ¶¶ 13, 14, 16-18). The Court further notes that it dismissed each of these claims in *McKinney I*. Even so, the Court will address each of Plaintiff's claims anew.

---

[2] Plaintiff has removed a claim that her rights under the FMLA were violated when she was allegedly discriminated against because of her disabilities. (*compare* SAC at ¶¶ 88-86 *with* FAC at ¶ 60-61).

## I.   Equal Protection Claim

Plaintiff asserts that the County violated the equal protection clause of the Fourteenth Amendment when it "subject[ed] Plaintiff to terms and conditions of employment different from those offered to employees of a different racial extraction." (SAC at ¶¶ 74-79). Plaintiff seeks to remedy that violation through 42 U.S.C. § 1983 ("Section 1983"). (*Id*).[3]

The Fourteenth Amendment affords employees the right to be "free from discrimination  . . ." and therefore, employees may vindicate that right under "[Section] 1983 against any responsible persons acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). To properly assert a claim under Section 1983, a plaintiff must allege: (1) a violation of a right secured by the Constitution and laws of the United States and (2) the alleged deprivation was committed by a person acting under color of state law." *Id.* at 87-88 (internal citations and quotations omitted).

To state a plausible Section 1983 claim pursuant to the Fourteenth Amendment Equal Protection Clause, "it is axiomatic that plaintiff must allege that similarly situated persons were treated differently." *Gagliardi v. Vill. Of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994) (internal citations omitted). Bald allegations lacking in specificity that a municipality showed preferential treatment to one group over another will not suffice. *Id.*

### a.   Similarly Situated Comparators

Plaintiff alleges: (1) that white officers are not required to report back to work as soon after a disability as Black officers are required to (SAC at ¶ 33); (2) white officers are not subject to hostile and aggressive monitoring while on sick leave and receive "generous sick and disability retirement terms"

---

[3] Plaintiff's second cause of action seeks to remedy "violation[s] of . . . federal rights through [Section] 1983. (SAC 74-79). The Court construes this cause of action as really pertaining to her first cause of action, alleging violations of the Fourteenth Amendment, and her fourth cause of action, asserting violations of Section 1981, (*id.* ¶¶ 74-76, 88), as Section 1983 confers no substantive rights but rather "provides a remedy for the violation of federal constitutional or statutory rights." *Lyde v. New York City*, 145 F. Supp.2d 350, 353 (S.D.N.Y. 2001).

(*Id.* at ¶¶ 34, 55); (3) that the County established a policy of white officers receiving "privileged posts" over Black officers (*Id.* at ¶¶ 50, 54); (4) that white officers who engaged in serious misconduct, including criminal conduct, "were allowed to keep their jobs with full knowledge . . ." of the County (*Id.* at ¶ 53); (5) that white officers who received medical directives not to have contact with inmates were granted reprieve from such contact, unlike Black officers (*Id.* at ¶ 56); and that (6) Black officers were denied FMLA and Section 207-c benefits, and reasonable accommodations following disability, unlike white officers. (*Id.* at ¶¶ 59-62). Plaintiff also lists examples of allegedly differential treatment non-Black officers received with cursory descriptions of the alleged differential treatment. (*Id.* at ¶¶ 36-48). In response, the County argues that Plaintiff's allegations are either conclusory or insufficiently detailed to make out an equal protection claim. (Def. Mot. at pp. 14-15).

As in *McKinney I*, the Court agrees with the County. To raise an inference of discrimination, Plaintiff must show that the employer treated her less favorably than a similarly situated employee outside of her protected group. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citing *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). General assertions that Plaintiff was subjected to different treatment than her white or non-Black colleagues, without more, is insufficient. See *Pagan v. Cty. Of Dutchess*, No.18 CV 1785 (VB) 2018 WL 6591578, at *5; see also *Whittle v. Cty. of Sullivan*, No. 16-CV-725 (CS), 2017 WL 5197154, at *7 (S.D.N.Y. Nov. 8, 2017).

Here, Plaintiff provides additional, though still insufficient, factual allegations from the FAC. For instance, *McKinney I* stated that plaintiff failed to "allege any facts about other officers' identities, their experience levels, their conduct[], or their job descriptions . . ." and that her allegations lacked clarity as to what officers received sick pay. *McKinney I* at p. 7. The SAC now contains 13 descriptions of non-Black officers who, according to Plaintiff, received more generous treatment than Plaintiff. (SAC at ¶¶ 35-48.) A majority of these alleged comparators are not comparable and not similarly situated to Plaintiff. Instances of officers committing crimes, (*e.g., id.* ¶ 41), or otherwise engaging in misconduct,

(*e.g.*, *id.* ¶ 44), are plainly inapt. Plaintiff does allege certain instances where white officers were allowed the proper time to heal before returning to work. (*See Id.* ¶¶ 39-40, 43, 46, 47). These allegations, though, are each fatally bare, with only conclusory statements that the relevant officers were not "forced back" to work early. (*See, e.g., Id.* ¶ 39-40). Similarly, the exact circumstances of their injuries and recoveries are left entirely unexplained and devoid of any details. Without more relevant facts,  as in *McKinney I*, Plaintiff's Fourteenth Amendment claim is deficient, not plausibly alleged, and must be dismissed.

## II.  EEOC Exhaustion

Prior to asserting a Title VII or ADA claim,  a plaintiff is required to file a timely EEOC charge. See 42 U.S.C. § 2000e–5(e)(1); *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999); *Usala v. Consolidated Edison Co. of N.Y.*, 141 F. Supp.2d 373, 378-79 (S.D.N.Y. 2001).

### a.  Timeliness of Claims

A plaintiff is required to bring a Title VII or ADA claim within the timeframe set out in 42 U.S.C. § 2000e-5(e)(1). *Edner v. NYCTA-MTA*, 134 F. Supp.3d 657, 663 (E.D.N.Y. 2015) (quoting *Patterson v. Cty. of Oneida*, N.Y., 375 F.3d 206, 220 (2d Cir.2004)); *Usala*, 141 F. Supp.2d at 378-79. When a New York resident files a charge of discrimination with the EEOC, it is deemed, as a matter of law, to have actually been initially filed with the New York State Department of Human Rights, thus triggering the 300-day window. *See Torrico v. International Business Machines Corp.*, 319 F. Supp.2d 390, 400-403 (S.D.N.Y. 2004) (citing *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 327 (2d Cir. 1999)). Acts that occurred outside of this statutory period are time-barred. *See Vega*, 801 F.3d at 78-79.

There are, however, instances where an alleged incident arising outside that 300-day window may be considered. "Under the continuing violation exception, if a plaintiff files a timely EEOC charge 'as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all

8

claims of acts of discrimination under that policy will be timely even if they would be untimely

standing alone.'" *Edner*, 134 F. Supp. 3d at 663 (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d

135, 155–56 (2d Cir. 2012)). To fall within the continuing violation exception and sustain a claim, "a

plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy

occurred within the limitations period." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir.

2004).

An otherwise untimely claim of hostile work environment may be deemed timely under

continuing violation exception "so long as one act contributing to the claim occurred within the

statutory period; if it did, 'the entire time period of the hostile environment may be considered by a

court for the purposes of determining liability.'" *Patterson*, 375 F.3d at 220 (quoting *National R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

At the outset, the Court notes that the SAC is opaque as to when Plaintiff's allegations

occurred, when her charge of discrimination was filed, and when she received a right to sue letter from

the EEOC. Proceeding in reverse order, Plaintiff only asserts she initiated this action within 90 days of

receiving a right to sue letter. (SAC ¶ 73). Plaintiff makes no overt reference to filing a charge of

discrimination with the EEOC. Finally, Plaintiff appears to indicate she began experiencing unlawful

discrimination and/or a hostile work environment in March 2017. (*Id.* ¶ 8).

In an effort to define the applicable time period—and, consequently, the relevant allegations in

the SAC—the Court will thus consider the charge Plaintiff filed with the EEOC (the "EEOC

Charge"[4]). A court may properly consider an EEOC Charge at the motion to dismiss stage. *See*

*Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp.3d 412, 438 (S.D.N.Y. 2023) (stating

---

[4] Defendant provided a copy of the EEOC Complaint with its moving papers. (*See* Affidavit of David L. Posner, Esq. in
Support re: Motion to Dismiss Second Amended Complaint ("Def. Aff."), Ex. J, ECF No. 58).

that in a motion to dismiss, courts may consider EEOC filings because "they are public documents" and are "integral to [a p]laintiff's claims.") (quoting *Morris v. David Lerner Assocs.*, 680 F. Supp.2d 430, 436 (E.D.N.Y. 2010); *see also McLeod v. Lowe's Home Improvement*, Nos. 09-CV-834, 09-CV-835, 2010 WL 4366901, at *2 n.2 (N.D.N.Y. Oct. 28, 2010) ("On [a] Fed. R. Civ. P. 12(b)(6) motion, the [c]ourt may properly consider the EEOC charges and right-to-sue notices because they are public documents in administrative proceedings and are integral to [the] plaintiff's claims."); *Kouakou v. Fideliscare N.Y.*, 920 F. Supp.2d 391, 394 n.1 (S.D.N.Y. 2012) ("Because the EEOC [c]harge is part of an administrative proceeding, the [c]ourt may take judicial notice of it without converting [the] [d]efendant's motion into a motion for summary judgment."). The EEOC Charge is dated November 27, 2018 and was received by the EEOC on December 6. 2018. (EEOC Charge, pp.2, 6). Incidents from March 2017, occurred well outside the 300-day window for Plaintiff to timely file with the EEOC. Consequently, the Court will only consider allegations it can identify as occurring within 300 days of November 27, 2018,[5] unless the SAC adduces facts which would give rise to the limited exception to the rule.[6]

### III.    Title VII Claims

The Court will now consider the merits of Plaintiff's Title VII claims. These claims allege discrimination on the basis of race, unlawful retaliation, and the creation of a hostile work environment. (SAC ¶¶ 82-83).

---

[5] For clarity, the Court will consider the allegations that occurred between January 31, 2018 and November 27, 2018.
[6] The Court will also presume that Plaintiff did, in fact, initiate this action within 90 days of receiving a right to sue letter. Given the EEOC generally has 180 days to respond to a complaint and the fact that this action was initiated on May 1, 2019, the Court finds this a reasonable presumption.

a.  **Racial Discrimination**

Title VII provides that an employer cannot discriminate against "any individual" based on his or her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a motion to dismiss, a claimant must plausibly allege: (1) the employer discriminated against her (2) because of her race. *Lowman v. NVI LLC*, 821 Fed. App'x. 29, 31 (2d Cir. 2020) (quoting *Vega*, 801 F.3d at 85) (summary order). An employer discriminates against an employee "by taking an adverse employment action against [her]." *Vega*, 801 F.3d at 85. An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Id*. (citing *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). The Second Circuit has indicated that such an action "is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). "[M]aterial adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id*. (internal quotations omitted).

Relatedly, an adverse action is defined in part by the causal role the claimant's protected identity played in the change. Thus, the change in terms and conditions must be "because of" the employee's race, color, religion, sex, or national origin such that it was "a substantial or motivating factor" contributing to the employer's decision to take the action. *Id.* (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 249 (1989) (plurality opinion), superseded on other grounds by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071). At the motion to dismiss stage, an employee must allege the adverse action was made "at least in part for a discriminatory reason" by "alleging facts that directly

show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)).

### i.  Adverse Employment Action

As in the FAC, Plaintiff's SAC appears to allege four potential adverse employment actions, namely, that she was: (1) denied privileged posts with no inmate contact; (2) forced to return to work while she was ill; (3) denied half pay sick leave; and (4) denied accommodation to perform tasks that do not involve significant use of her left arm. (SAC at ¶¶ 15-34, 50-51, 60.) Plaintiff alleges that when management discriminately denied her half pay, it "forc[ed] her to lose insurance while management would routinely grant these requests to White officers including those cited in this complaint. (SAC at ¶ 62.) Plaintiff also alleges that she "lost substantial amount of income and seniority as a result of the discriminatory treatment by the defendants." (SAC at ¶ 63.)

As in *McKinney I*, the Court finds the alleged denial of privileged post assignments does not constitute an adverse employment action. *McKinney I* p.10. Plaintiff again does not allege that the preferred post assignments would have resulted in an increase in wage, salary, benefits, change in title, or significantly increased material responsibilities. Their favorable nature arises from the lack of inmate contact. Further, the SAC simply alleges that "[t]he County established a policy where only white officers get privileged posts and Black officers are denied privileged posts." (SAC at ¶ 50.) However, as mentioned in *McKinney I*, it can be inferred that "all post assignments—whether the posts require inmate contact or not—are within the job description of a correction officer. Thus, a denial of a particular post assignment does not alter her job responsibilities." *McKinney I* at p. 10. Since the SAC fails to assert anything other than the fact that Plaintiff's preference for a privileged post was denied, Plaintiff's allegations again fail to rise to the level of an adverse employment action. *See Santiago v. City of New York*, No. 05-cv-3668 RRM, VVP, 2009 WL 935720, at *9 (E.D.N.Y. Mar. 31, 2009); *see also Monroe*

*v. City of Danbury*, No. 3:09-CV-02132 DJS, 2014 WL 3943632, at *7 (D. Conn. Aug. 11, 2014) (subjective preference for an assignment does not constitute "objective evidence of material disadvantage").

Denials of requested employment accommodations may be considered an adverse action if it impacts on the employee, such as a discharge, demotion, or failure to promotes. *See Little v. Nat'l Broadcasting Co., Inc.*, 210 F. Supp.2d 330, 337 (S.D.N.Y. 2002). Much like the allegations in the FAC, in the SAC Plaintiff alleges she was forced to return to work while she was ill, denied half pay sick leave, and denied accommodation to perform tasks that do not involve significant use of her left arm. (SAC at ¶¶ 15, 25, 60.)

Once again drawing reasonable inferences in the non-movant's favor, the Court finds that Plaintiff SAC sufficiently alleges adverse employment actions. The denials of employment accommodations "created a materially significant disadvantage" in Plaintiff's working condition by requiring her to return to work when she was still ill and to perform tasks involving two hands when she was unable to use her left hand. *See, e.g., Beyer v. Cty. of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008) (requiring "objective indicia of material disadvantage" to constitute an adverse employment action); *Krishnapillai v. Donahoe*, No. 09-CV-1022 NGG SM, 2013 WL 5423724, at *13 (E.D.N.Y. Sept. 26, 2013) (denial of sick leave constitutes a material adverse employment action). Accordingly, Plaintiff has pleaded adverse employment action under Title VII based on denials of requested employment accommodations.

### ii. Inference of Discrimination

"At the initial stage of a litigation, the plaintiff's burden is 'minimal'—he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Vega*, 801 F.3d at 86–87 (2d Cir. 2015) (quoting *Littlejohn v. City of New*

*York*, 795 F.3d 297, 311 (2d Cir. 2015). "[W]hile the plaintiff ultimately will need evidence sufficient to prove discriminatory motivation on the part of the employer-defendant, at the initial stage of the litigation—prior to the employer's coming forward with the claimed reason for its action—the plaintiff does not need substantial evidence of discriminatory intent." *Littlejohn*, 795 F.3d at 311 (2d Cir. 2015).

As previously discussed, Plaintiff has not pled sufficient facts to show a plausible inference of discrimination. Plaintiff's alleged basis for the alleged discriminatory intent by her employer is premised on the notion that similarly situated white or non-Black employees who were not forced to return to work while she was ill, denied half pay sick leave, and/or denied an accommodation. Plaintiff, however, has failed to adequately explicate other similarly situated white or non-Black employees who were not allegedly "forced" to return to work while ill, received half pay sick leave, or denied other work accommodations. *See Goodine v. Suffolk Cty. Water Auth.*, No. 14-CV-4514 (JS)(ARL), 2016 WL 375049, at *6 (E.D.N.Y. Jan. 29, 2016) (finding plaintiff failed to meet "minimal" burden at pleading stage by failing to identify a similarly situated comparator). Of the instances where white officers were allowed the proper time to heal before returning to work, Plaintiff fails to provide any details as to the nature of the injuries sustained, whether they were work-related injuries or information on their recovery periods. (*See* SAC ¶¶ 39-40, 43, 46, 47). She only provides bald conclusions that these officers were not "forced back" to work early. Without more, these individuals cannot rise to the level of similarly situated comparator because, as pled, there are insufficient facts for the Court to determine that the alleged comparators are similarly situated. Likewise, while Plaintiff makes two references to officers being on sick leave, she never affirmatively states for how long or the amount of sick pay they received. (*Id*. ¶¶ 40, 45). Again, the Court cannot determine whether there are disparities in treatment without like facts to compare.[7]

_____

[7] The Court notes that Plaintiff makes references to co-workers who received employment benefits while being sick, disabled or while subject to disciplinary actions. (*See, e.g.,* SAC ¶¶ 40, 42–43, 46–47). She further makes references to "207c." (*See, e.g.,* ¶¶ 60, 70). General Municipal Law § 207-c generally provides for the payment of salary, wages, medical

Accordingly, Plaintiff's has failed to plead a Title VII discrimination claim against County Defendant with respect to racial discrimination. Plaintiff's Title VII discrimination claim is dismissed.

### b. Hostile Work Environment

To state a hostile work environment claim, Plaintiff must allege that Defendants' conduct (1) was "objectively severe or pervasive," (2) created an environment that was "subjectively perceived as hostile or abusive," and (3) created such an environment "because of" the plaintiff's race. *See Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp.3d 763, 780 (S.D.N.Y. 2019). To survive a motion to dismiss, a plaintiff need only "plead facts sufficient to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 514 (S.D.N.Y. 2016). Stated differently, to survive a motion to dismiss for failure to state a claim upon which relief can be granted, factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true even if doubtful in fact. *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556.  The Court looks at the totality of circumstances. *See Yan v. Ziba Mode Inc.*, No. 15-cv-47 (RJS), 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016). Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) "whether it unreasonably interferes with an employee's work performance." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal citations omitted),

To support her claim, Plaintiff alleges she was subjected to oppressive and hostile visits to her house and was aggressively questioned while she was out on unpaid sick leave. (SAC at ¶¶ 21-22.)

---

and hospital expenses of . . . correctional officers who sustained injuries or illness incurred in the performance of duties. *See* N.Y. Gen. Mun. L. § 207-c. Plaintiff did not sustain a line of duty injury. (*Id*. ¶¶ 9–10).

Plaintiff alleges this occurred "on multiple occasions" and the officers would position themselves in visible spots and watch Plaintiff's movements around her home. (SAC at ¶ 55.)  Plaintiff also alleges her supervisors made comments "castigating [her] for taking time off for sickness saying it[']s not a good reflection on the career of an officer who wants to advance." (*Id*. at ¶ 65.) Further, Plaintiff alleges a Col. Krom, a high-ranking officer "regularly" referred to Plaintiff in a racially disparaging manner. (*Id*. at ¶¶ 26, 71).

Plaintiff has not alleged sufficient facts in the SAC to indicate that the questioning, monitoring, and visitations at her home during sick leave were pervasive enough to "alter the conditions of employment." *Beale v. Mount Vernon Police Dep't*, 895 F. Supp. 2d 576, 590 (S.D.N.Y. 2012). Although there is no "magic number of incidents above which harassment is actionable," *id*., Plaintiff's SAC still includes only broad allegations of these home visits happening on "multiple occasions." (SAC at ¶¶ 21, 55.) Allegations of  "multiple" home visits are insufficient to show pervasiveness. *Beale,* 895 F. Supp. 2d at 590 (finding half-dozen comments over a sixteen-month period are insufficient). Moreover, such conduct cannot be said to unreasonably interfere with Plaintiff's performance.

Plaintiff's claim also includes purported comments made by her supervisors that castigate her for taking too much sick leave. More specifically, that it is "not a good reflection on the career of an officer who wants to advance," do not provide an inference of racial discrimination nor can it be said to unreasonably interfere with her performance. (SAC ¶ 65). While they may be perceived as unpleasant, they appear at best to be commentary on the number of sick leave requests made by Plaintiff. Plaintiff also only alleges that Supervisors have made "castigating" comments about Plaintiff taking time off "on multiple occasions since March 2017." (*Id.* at ¶ 65). As pled, this allegation is insufficient to support a claim for a hostile work environment.

Lastly, Plaintiff asserts that Col. Krom made racially disparaging comments which were ""regularly" made. (SAC at ¶¶ 26, 71.) As with many of her other allegations, there is little to identify when, where and the frequency to which Col. Krom made these comments. Taken in context, however, they appear to have arisen outside the 300-day window within which Plaintiff had to file an EEOC complaint. Plaintiff states she went to the "HR Department" during her 2017 sick leave to request full benefits, which was denied. (*Id.* ¶ 25). She further states that thereafter she went to Col. Krom, who made the racial comment. (*Id.* ¶ 26). The reasonable inference, then, is that this interaction occurred in 2017—far outside the 300-day window, as discussed above.

Further, "[f]or racist comments . . . to constitute a hostile work environment, there must be more than few isolated incidents of racial enmity." *United States v. New York City Department of Education*, 407 F. Supp.3d 365, 400 (S.D.N.Y. 2018) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)) (internal citations omitted). The critical inquiry is into "the quantity, frequency, and severity of the slurs[,]" which are to be "considered cumulatively in order to obtain a realistic view of the work environment." *Id.* (quoting *Schwapp*, 118 F.3d at 110-11). The making of "sporadic racial slurs" is insufficient, instead, there must be a steady barrage of pejorative racial comments. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (internal quotation marks omitted). They must be sufficiently continuous and concerted in order to be deemed pervasive. *Littlejohn*, 795 F.3d at 366.

The slur used here, "Black crack whore", (*see* SAC ¶¶ 26, 71), is certainly severe and "goes beyond merely unflattering; it is degrading and humiliating in the extreme." *United States v. New York City Department of Education*, 407 F. Supp.3d at 400 (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001)). The pleading fails, however, to provide the court a "cumulative[]" understanding of the workplace environment. *Id.* By inference, the Court has found one incident which

took place in 2017 time-barred and thus outside the scope of its review. Plaintiff's lone other allegation is that the slur was used "regularly," without any further specificity. (See SAC ¶ 71), Merely adding an adverb to the allegations is insufficient to make out a hostile work environment claim.[8]  Accordingly, Plaintiff's hostile work environment claim is dismissed for failure to plead a plausible claim.

### c.  Retaliation

To state a Title VII retaliation claim, Plaintiff must plead facts that show (1) she "participated in a protected activity known to the defendant"; (2) "the defendant took an employment action disadvantaging her"; and (3) there was a "casual connection between the protected activity and adverse action." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007). To survive a motion to dismiss, the plaintiff must plausibly allege: "(1) defendants discriminated or took an adverse employment action against him, (2) because he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (internal quotations omitted). An "adverse employment action" is read more broadly in the Title VII retaliation context than in the Title VII discrimination context. *Id*. Thus, an adverse employment action sufficient to support a retaliation claim is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id*. (quoting *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006)). To show causation between the adverse action and the protected activity, a claimant must plausibly plead a connection between the two events. *Id*. Additionally, the plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id*.

In support of her claim, Plaintiff alleges that she "was constantly reminded by her superiors to stop complaining of discrimination and unfair treatment of black or be disciplined as insubordinate." (SAC at ¶ 69.) Plaintiff alleges she "was eventually disciplined with termination on August 5, 2019,

---

[8] Plaintiff alleges that "Col Kram and late Sheriff Anderson . . . presided over a policy of discrimination and harassment of Plaintiff. Krom would regularly call her "Black crack whore.'" (SAC ¶ 71). The places, times and the frequency to which the remark(s) was made is not asserted.

[cl]aiming termination was pursuant to Plaintiff's absence due to illness but the absence developed because Defendant consciously adopted policy of misinterpretation on half sick day use and 207c sick time that were punitive to Plaintiff." (*Id*. at ¶ 70.)

The Second Circuit has recognized that "protected activity" includes "informal protests of discriminatory employment practices, including making complaints to management." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Such informal complaints "must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII." *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012).

Drawing reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has sufficiently pled that she engaged in protected activity. As alleged in the SAC, she complained about the discrimination and unfair treatment of black officers to her supervisors.

Plaintiff, however, has not adequately pled an adverse employment action in the retaliation context. Plaintiff's SAC has not alleged that her supervisors' comments were "materially adverse" such that the action "may have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68. Plaintiff's "eventual[] discipline[]" was her termination on August 5, 2019. (SAC ¶ 70). Plaintiff again only makes the bare assertion that her termination was because of her repeated complaints. (*Id*.). Plaintiff even provides the County's stated rationale, which related to Plaintiff's use of "half sick days". (*Id*.) Plaintiff fails to allege the necessary but-for-cause element of her claim. A plaintiff alleging retaliation in violation of Title VII must show that retaliation was a "but-for" cause of the adverse action, and not simply a "substantial" or "motivating" factor in the employer's decision. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845–46 (2d Cir. 2013) (internal citation omitted). However, the "but-for" causation does not require s showing that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive. *Id.* Consequently, her allegations do not arise to the level of an adverse

employment action by the County Defendants. Plaintiff's Title VII retaliation claim is therefore dismissed for failure to pled a plausible claim.

## IV.     Section 1981 Claim

In her SAC, Plaintiff asserts the Defendant violated her federal rights pursuant to Section 1981 due to racial discrimination. (*Id*. ¶ 1981). By doing so, she properly brings an action to remedy that violation under Section 1983. *Villar v. City of New York*, 135 F. Supp. 3d 105, 140 (S.D.N.Y. 2015) (Section 1981 violations by government units may be vindicated through Section 1983). Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 410 (S.D.N.Y. 2014) (quoting *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004)). "Section 1981 discrimination claims are analyzed under the same substantive standard applicable to Title VII discrimination claims." *Id*. (collecting cases).

For the reasons discussed above regarding Plaintiff's Title VII discrimination claim(s), she has failed to plausibly plead a Section 1981 claim against County Defendant and must be dismissed.

## V.      ADA Claim

Plaintiff alleges Defendants discriminated against her because of her disability. (SAC at ¶ 86.) Title I of the ADA forbids discrimination against persons with disabilities in employment. 42 U.S.C. §§ 12111–12117. To establish a prima facie case under the ADA, a claimant must sufficiently allege four material elements: (1) her employer is subject to the ADA; (2) that she was disabled within the meaning of the ADA; (3) that she was otherwise qualified to perform the essential functions of her job; and (4) that she suffered an adverse employment action due to her disability. *Alexander v. DiDomenico*, 324 Fed. App'x 93, 95 (2d Cir. 2009) (quoting *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004))

(summary order). At the motion to dismiss stage, the Court considers the elements of the prima facie case "in determining whether there is sufficient factual matter in the complaint" that "gives defendant a fair notice of plaintiff's claim, and the grounds on which it rests." *Klaes v. Jamestown Bd. of Public Utilities*, No. 11-CV-606, 2013 WL 1337188, at *7 (citing *Murphy v. Suffolk Cty. Cmty. Coll.*, No. 10-CV-0251 (LDW)(AKT), 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011)).

Under the ADA, "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [the] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). Plaintiff sufficiently alleges that she "suffered serious injuries to her left hand that resulted in her inability to carry out normal life functions like lifting with the hand, walking without pain, moving the hand or doing any other physical activities with the hand." (SAC at ¶ 11.) Plaintiff further details that "[t]he hand was fractured and her diagnosis included complex comminuted intra articular fracture" and that she "was unable to use this left hand for any activity." *Id.* Therefore, Plaintiff SAC sufficiently pleads that she is disabled within the meaning of the ADA.

Plaintiff, however, failed to assert that she was otherwise qualified to perform the essential functions of her position. Plaintiff, a correctional officer, sustained a permanent non-work-related injury in March 2017 and was required to return to work in or about December 2018. Plaintiff asserts that she repeatedly requested multiple accommodations which were not provided, such as job assignments with no or limited inmate interaction. Generally, an employer does not have a duty to transfer a disabled employee who is unable to perform basic functions within her job title to another available position, absent some showing of a contractual right to transfer or an established policy of such transfers. *See Bates v. Long Island R. Co.*, 997 F.2d 1028, 1035 (2d Cir.1993). In her SAC, Plaintiff does not proffer any assertion showing a contractual right to a transfer or sufficient facts to established policy of such transfer for non-work-related injured employees. Being tasked with unfavorable work assignments

which fall within the basic duties of a plaintiff's position does not rise to the level of an adverse employment action. *See Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 434 (E.D.N.Y. 2015)

Because Plaintiff has failed to plausibly assert an ADA discrimination claim, it is deemed dismissed.

## VI.   FMLA Claim

Although the SAC briefly mentions Plaintiff's FMLA denial in the recitation of facts, (*see* (SAC at ¶¶ 57-59, 61), she fails to affirmatively assert such a claim. (*see Id.* at ¶¶ 74-88). Defendants assert "[Plaintiff] abandoned her FMLA claims in the [F]AC in the face of defendant's earlier motion to dismiss." (Def. Mot. at 20.) Plaintiff does not assert otherwise in her reply to Defendant's Memorandum of Law. Thus, to the extent Plaintiff may have initially intended to assert an FMLA claim, it is clear to this Court that Plaintiff has since abandoned it.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Second Amended Complaint is GRANTED in its entirety.  Plaintiff's claims are dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 57 and terminate the action.

Dated:   March 31, 2024                                SO ORDERED:
         White Plains, New York

                                                                 _____
                                                      NELSON S. ROMÁN
                                               United States District Judge